**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

```
                                )
UNITED STATES OF AMERICA,       )
                                )
             Plaintiff,         ) Case No: 4:18cr40
                                )
        v.                      ) Tallahassee, Florida
                                ) March 29, 2019
NICHOLAS HUGHES,                )
                                ) 11:07 AM
                                )
             Defendant.         )
_____  )
```

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE MARK E. WALKER**
**UNITED STATES CHIEF DISTRICT JUDGE**
**(Pages 1 through 33)**

<u>APPEARANCES</u>:

For the Government:        U.S. Attorney's Office
                           By:  MICHELLE K. DAFFIN
                                Assistant U.S. Attorney
                                michelle.daffin@usdoj.gov
                           111 North Adams Street
                           Tallahassee, Florida 32301




For the Defendant:         Federal Public Defender's Office
                           By:  RANDOLPH P. MURRELL
                                Federal Public Defender
                                randolph_murrell@fd.org
                           227 N. Bronough Street, Suite 4200
                           Tallahassee, Florida 32301




*MEGAN A. HAGUE, RPR, FCRR, CSR*
**Official United States Court Reporter**
**111 North Adams Street, Tallahassee, Florida 32301**
**850.422.0011 * megan.a.hague@gmail.com**

# P R O C E E D I N G S

1

2    (Call to Order of the Court at 11:07 AM on Friday,

3  March 29, 2019.)

4          THE COURT:  Please take your seats.

5          We are here in Case No. 4:18cr40, United States

6  versus Hughes.  Mr. Hughes is present together with his

7  lawyer, Mr. Murrell.  I have Ms. Daffin on behalf of the

8  government.

9          We are here for sentencing today.

10          Ms. Daffin, is the government ready to proceed?

11          MS. DAFFIN:  We are, Your Honor.

12          THE COURT:  Mr. Murrell, is the defense ready to

13  proceed?

14          MR. MURRELL:  Yes, sir.

15          THE COURT:  If I could, please, have Mr. Hughes

16  stand, raise his right hand, and be sworn.

17    (Defendant was duly sworn by the courtroom deputy.)

18          THE COURTROOM DEPUTY:  Please state your full name

19  for the record.

20          THE DEFENDANT:  Nicholas Holland Hughes.

21          THE COURTROOM DEPUTY:  Thank you.

22          THE COURT:  Mr. Hughes, you, of course, went to

23  trial; and when the jury returned its verdict, I informed

24  you that a presentence investigation report would be

25  prepared.

1          Have you reviewed the presentence investigation

2    report in this case?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you gone over it in detail with

5    your lawyer, Mr. Murrell?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Has Mr. Murrell answered any and all

8    questions you have regarding the report or this proceeding?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Your lawyer filed objections to the

11   report by letter dated February 26, 2019.  The government

12   filed its responses by letter dated February 28, 2019.

13         Did you have an opportunity to review those

14   objections together with the report itself?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Did you go over the objections with

17   your lawyer, Mr. Murrell?

18         THE DEFENDANT:  I did.

19         THE COURT:  Did you ask Mr. Murrell to file any

20   objections that he failed to file; that is, did you ask him

21   to do something he didn't do?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  In response to the objections,

24   probation prepared what's labeled an addendum.  It's simply

25   the last two pages of the presentence report -- mine are

```
1   divided up; it's probably just stapled as the last two pages
2   of your report -- pages 21 and 22, beginning on paragraph
3   121 where probation goes through and explains how they've
4   responded to the objections.
5           Did you review the addendum?
6           THE DEFENDANT:  Yes, Your Honor.
7           THE COURT:  Did you likewise go over that with
8   Mr. Murrell?
9           THE DEFENDANT:  Yes, sir.
10          THE COURT:  All right.
11          I need to advise you before we move further, as
12  part of this proceeding today you have the right of
13  allocution.  That's simply a fancy way of saying you have a
14  right to speak to me directly.  While I have every reason to
15  believe that your lawyer will make a presentation on your
16  behalf, you have a right to address the Court directly.
17          Do you understand you have that right?
18          THE DEFENDANT:  I do.
19          THE COURT:  All right.
20          In addition to the report, the objections, and the
21  addendum, I received a sentencing memorandum from your
22  lawyer, which is ECF Document 69.
23          Did you know that your lawyer had filed a memo on
24  your behalf?
25          THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  And did you discuss that with him as

2    well?

3          THE DEFENDANT:  Yes.

4          THE COURT:  The government likewise filed a

5    sentencing memorandum, ECF Document 70.  It is a five-page

6    document, the last two pages are basically signature pages,

7    a relatively brief document.

8          Did you know the government has likewise filed a

9    memorandum?

10          THE DEFENDANT:  I found out briefly today.

11          THE COURT:  All right.

12          And did you -- were you able to discuss that

13    limited three-page memo with your lawyer?

14          THE DEFENDANT:  Incredibly briefly.

15          THE COURT:  If you want more time, you

16    certainly -- I can hand you a copy of it and y'all can read

17    it right now, if you want more time.

18          THE DEFENDANT:  That's all right.

19          THE COURT:  All right.

20          Your lawyer also submitted a letter from your

21    father, which is by cover letter March 25, 2015.

22          Mr. Murrell, I think you sent that to us directly.

23    I don't think it was filed on ECF; is that correct?

24          MR. MURRELL:  That's correct.

25          THE COURT:  All right.

1        Have you seen it, Ms. Daffin?

2        MS. DAFFIN:  I have, Your Honor.

3        THE COURT:  All right.

4        It says you were copied, of course, CCed on the

5   bottom of the letter.

6        I'm going to have this marked as Defense Exhibit 1

7   to these proceedings.

8        Mr. Hughes, were you aware that your father had

9   submitted a letter to the Court?

10        THE DEFENDANT:  I was.

11      (DEFENSE EXHIBIT 1:  Received in evidence.)

12        THE COURT:  Mr. Murrell, I'm not aware of anything

13   else that's been submitted or filed.  Has anything else been

14   filed or submitted?

15        MR. MURRELL:  No, sir, that's everything.

16        THE COURT:  Ms. Daffin?

17        MS. DAFFIN:  No, that's everything, sir.

18        THE COURT:  I started the proceeding by

19   acknowledging that we had gone to trial in this case.  The

20   other file I've got in front of me, Mr. Hughes, are my notes

21   from the trial because, of course, I was the judge that

22   presided over the trial.  So I'm familiar with the facts,

23   not just as reflected in the presentence report, but I, of

24   course, have sat through the trial and heard the testimony

25   as well.

1             Let me turn -- having gone, as required and

2     properly so in the Rules of Criminal Procedure, I've

3     verified that Mr. Hughes has reviewed the report, the

4     objections, the addendum; I've advised him of his right of

5     allocution; and I've also verified that everything that was

6     filed or submitted to the Court, the Court's reviewed; and I

7     made everyone else aware of what I've reviewed.

8             I do want to find out from Mr. Murrell.

9     Mr. Murrell, as I understand it, based on your objections,

10    do the changes that have been made to the presentence report

11    address any and all concerns you have regarding the

12    calculation of the guidelines?

13            MR. MURRELL:  Yes, sir.

14            THE COURT:  Ms. Daffin?

15            MS. DAFFIN:  Your Honor, the government has no

16    objection to the revised calculation.

17            THE COURT:  All right.

18            So staying with the government, Ms. Daffin, does

19    the government agree the total offense level is 43, the

20    criminal history category is I, and the guideline range is

21    life?

22            MS. DAFFIN:  Yes, sir.

23            THE COURT:  Mr. Murrell?

24            MR. MURRELL:  Those are the correct calculations,

25    yes, sir.

```
1              THE COURT:  And there's, of course, a 15-year

2    mandatory minimum as to Count Two; correct?

3              MS. DAFFIN:  Yes, Your Honor.

4              MR. MURRELL:  Yes, sir.

5              MS. DAFFIN:  There's also a 10-year --

6              THE COURT:  A 10-year as to Count One.

7              MS. DAFFIN:  Yes, sir.

8              THE COURT:  All right.

9              So everybody is in agreement as to the mandatory

10   minimums that apply, as well as the guideline range.

11             Mr. Hughes, do you understand, with respect to the

12   mandatory minimum of 10 years as to Count One and 15 years

13   as to Count Two, that since a 5K1 motion has not been filed,

14   that is the minimum sentence under the law that I can

15   impose?

16             Do you understand that?

17             THE DEFENDANT:  I do, Your Honor.

18             THE COURT:  All right.

19             The next phase of sentencing, having determined

20   the guideline range -- and I should say that in addition to

21   the parties acknowledging that that's the correct total

22   offense level and criminal history category based on this

23   Court's independent review of the report, the guidelines,

24   commentary regarding same and case law, I find the total

25   offense level is 43, the criminal history category is I, and
```

1   the guideline range is life.

2          As noted by the parties, I also acknowledge the

3   10-year mandatory minimum on Count One and the 15-year

4   mandatory minimum as to Count Two.

5          Mr. Hughes, I'm going to first hear from your

6   lawyer, Mr. Murrell.  He'll make a presentation on your

7   behalf.  As part of that presentation, again, you have the

8   right to speak if you wish, you don't have to, that will be

9   up to you.  I'll then hear from Ms. Daffin, from the

10  government, as to the government's perspective as to the

11  appropriate sentence.  I'll then give your lawyer the last

12  word since you are being sentenced today.

13         Mr. Murrell, you have the floor.

14         MR. MURRELL:  Judge, there is no denying the

15  seriousness of the offense and the harm that resulted from

16  Mr. Hughes' conduct.  At the same time, my review is that

17  the guideline range is wildly disproportionate.  As I stated

18  in the sentencing memorandum, it's the same offense level

19  the guidelines have reserved for first-degree murder and

20  treason.  It's an offense level higher than someone would

21  have if they had hijacked an airplane, if they had committed

22  second-degree murder, if they had attempted a terrorist

23  attack with a weapon of mass destruction.

24         THE COURT:  I believe you also noted, Judge, the

25  mischief associated with the scoring would generally be

```
1    directed at somebody who was, for example, absconding with a
2    young child, having sex with them, filming it, and using it
3    for distribution as opposed to for private use.
4              MR. MURRELL:  Yes, sir.
5              And I think the history of the statute and the
6    guidelines bear that out, and I would suggest that's why the
7    guideline is as high as it is.  When Congress enacted the
8    statute, it was aimed at people that were exploiting
9    children for commercial purposes.
10             Ironically, if you look at the history of it, what
11   Congress said was that we are confident that prosecutors
12   won't use this statute in cases like Mr. Hughes.  That's all
13   changed over the years and it is routinely used in this
14   fashion, but that's not to say that the penalties are
15   proportionate.  Back when the statute was first enacted the
16   maximum penalty was 10 years.
17             THE COURT:  What is the status of the state
18   charges?
19             MR. MURRELL:  They are still pending.
20             As I told Mr. Hughes, he'll have to go back to the
21   Wakulla County Jail at some point and face those charges,
22   and that's part of what I said in there, too.
23             These are serious charges, but at the heart of it
24   is he has sexual relations with a minor and he's going to be
25   sentenced for that in state court.
```

1          THE COURT:  And as I understand it, he's charged

2    with lewd and lascivious which is a second-degree felony, I

3    believe, which is punishable by 15 years, the statutory max

4    as to each count.

5          MR. MURRELL:  I meant to get the -- there are

6    multiple charges as well so -- based on this same incident.

7    So, yes, he's looking at a long sentence there.

8          Of course, what I suggested in my memo is that if

9    you looked at what this case is really about, which is

10   enticing a minor to engage in sex, the guideline range would

11   be less than 10 years.  So, again, I think what's happened

12   is we've had so much exploitation through the Internet that

13   Congress has deemed it appropriate to keep increasing these

14   penalties, be it arbitrarily, but they've increased the

15   penalties.

16         And I suspect the irony -- to me, part of the

17   irony here is that this is not -- apart from the commercial

18   exploitation, when Congress was concerned about the

19   Internet, I think they are concerned about people hunting

20   minors on the Internet and using the Internet to exploit

21   children.  There was some text messaging here, but I would

22   suggest that what happened here is not what Congress was

23   concerned about when they continue to increase the

24   penalties, be it whether they were looking for people

25   engaged in commercial activity or whether it was some

1    concern about using the Internet to exploit children.

2            During the course of the trial I heard argument

3    about how Mr. Hughes was grooming the minor, and I think

4    that the government painted him in a rather cold and

5    calculated -- painted it as a calculated offense.  I would

6    suggest that's not what happened here.  As I told the jury

7    many times over, at least from Mr. Hughes' standpoint, this

8    was a real relationship.  He wasn't out to exploit anyone.

9    Was it foolish?  Yes.  Was it wrong?  Yes.  But it wasn't

10   his goal to exploit someone.

11           His father, in a wonderful letter, I think

12   probably hit it on the head.  Mr. Hughes -- things were

13   going difficult for him.  He sunk into some kind of a

14   depression, and I think this is largely the outgrowth of

15   that.

16           One of the things I've complained about, too, is

17   this five-level increase for a pattern of sexual activity.

18   Again, that's based on the idea that anyone that engages in

19   the pattern of activity presents a threat to others.  As I

20   said in the memo, I would suggest that Mr. Hughes' case,

21   this was a product of circumstances.  He's not someone out

22   hunting children or minors.

23           And here, again, you know, when the --

24           THE COURT:  Although, Mr. Murrell, shouldn't I

25   take into consideration -- I mean, it's -- it seems to me,

1    and I know it's scored, but it seems to me to be a

2    significant aggravator that folks send their children to

3    school and entrust their supervision to a teacher.  It's

4    every parent's worst nightmare that the very person that's

5    charged with responsibility of caring for their child ends

6    up having sex with their child.  I mean, it seems to me that

7    that's a significant aggravator in this case that is -- does

8    not necessarily exist -- I mean, I've had a number of

9    enticement cases, but it seems to me that's an aggravator in

10   that case that's not common to most of the cases that are

11   before this Court.

12           MR. MURRELL:  And the Court is entirely correct

13   and, of course, it is factored in here.  But I -- again,

14   even when you factor that in, I would suggest that the

15   penalties are disproportionate.

16           What I was about to say is that five-level

17   increase, for example, when it was first enacted, it require

18   that there be two victims.  It was rather arbitrarily

19   changed again so that now what happened here qualifies.

20           So, again, you know, his father said in the letter

21   that his son has a good heart, is a good person.  I think

22   that you heard the testimony about what a dedicated teacher

23   he was, his concern for his students and for the school.

24   And until he sort of went off the rails, that's the person

25   he was.  I would suggest he's still that same person.

1            His wife is here.  She's, I'm sure, ambivalent

2    about most of this, but she stuck by him.  His father

3    certainly stuck by him.  He has a two year old -- a son

4    that's not quite two years old.  He's told me that his real

5    concern is that he get out in time so that he can still have

6    some kind of a relationship with his son.

7            So I would suggest the penalties here are extreme,

8    even the mandatory minimum of 15 years is more than

9    adequate.  The guideline range suggested by the Sentencing

10   Commission is terribly disproportional, so our hope is that

11   the Court would consider a sentence to -- mandatory minimum

12   of 15 years.

13           THE DEFENDANT:  All I have to add is just an

14   apology for any trouble or harm my actions have caused.

15           THE COURT:  Thank you.

16           Y'all can step back.

17           Mr. Murrell, anything further?

18           MR. MURRELL:  Nothing further, no sir.

19           THE COURT:  Y'all can take your seat.

20           MR. MURRELL:  Okay.

21           THE COURT:  Ms. Daffin.

22           MS. DAFFIN:  It's impossible to quantify the harm

23   that the victim in this case endured and her family, the

24   school.  As Your Honor noted --

25           THE COURT:  Ms. Daffin, help me understand the

1   sentence when judges in the state court system routinely

2   sentence folks to the maximum sentence of 15 years for lewd

3   and lascivious, for multiple acts of sex with a minor, such

4   as this case, each and every day all across the State of

5   Florida, what are the aggravators in this case such that the

6   production of child pornography to make this case so much

7   worse when compared to the sentences that are meted out each

8   and every day in cases if the federal government chooses not

9   to bring parallel charges like were done in this case.

10          MS. DAFFIN:  Your Honor, I think I'm the perfect

11  prosecutor to ask that question.  Having been a county chief

12  of a state -- the state prosecutor's office and I, myself,

13  have been the prosecutor in that case.  The last case that I

14  had in state court, the state court judge sentenced the

15  defendant to 45 years.

16          THE COURT:  I've run consecutive sentences as well

17  as a state court judge.

18          MS. DAFFIN:  And so the aggravators here in this

19  particular instance are many.  As Your Honor already noted,

20  the defendant was in a particular position of trust, had a

21  particular opportunity to contact this victim, to continue

22  to have a relationship with her, to groom her, and to

23  develop that relationship to get her to the point of where

24  he wanted her to be.

25          Not only did the acts, as Your Honor noted, a

1  parent's worst nightmare, come as a result of that

2  relationship, they happened at school in the defendant's

3  classroom during the day and on multiple occasions.  We know

4  from the metadata of the exhibits that were entered into

5  trial that these happened on multiple occasions.

6           So not only do we have the abuse of the position

7  of trust, these acts happening at school, they're happening

8  on multiple occasions, they are happening over -- the

9  enticement is happening over a significant portion and a

10 period of time.

11          The victim herself, as another aggravator, is

12 particularly vulnerable.  Your Honor heard her testimony.

13 We heard the expert testimony related to how particularly

14 vulnerable children are who are engaging in difficult

15 decisions, abusing controlled substances.  So there are

16 multiple aggravating factors.

17          And specific to the production of child

18 pornography, and again happening on multiple occasions,

19 happening at school, also those pornographic images aren't

20 staying on one device as Your Honor --

21          THE COURT:  What says you to Mr. Murrell's

22 thoughtful argument that production of child pornography was

23 really conceived of, the penalties set and directed to

24 commercial production and distribution, not simply taking a

25 video or sharing images?

1          MS. DAFFIN:  I would disagree, Your Honor.

2     Perhaps that's where the genesis of this statute was

3     enacted, but it's a federal crime and the defendant

4     committed a federal crime.

5          THE COURT:  Should we treat the person that

6     absconds with a child and videotapes them having sex, sells

7     it on the Internet for commercial use, should that person be

8     treated the same or is that offense not substantially worse

9     than the facts here, which are bad enough?

10          MS. DAFFIN:  Well, Your Honor, that's what the

11     3553(a) factors are for; wouldn't you agree?

12          THE COURT:  That's what we are talking about,

13     Ms. Daffin.  You are asking me to sentence the man to life.

14     Mr. Murrell is saying 15 years, which given his age of 34 is

15     quite a spread there, and so it seems to me if we are

16     talking about the 3553(a) factors and comparing the facts of

17     the cases and considering other production cases where folks

18     have been sentenced in this Court or before my colleagues,

19     which cases have the aggravators such that we should be at

20     the high end of the guidelines, here life, and when should

21     we not go with life?

22          And so what I'm trying to figure out based on

23     other cases such as this where I've sentenced folks -- we've

24     got the aggravator that I asked Mr. Murrell about, here

25     we've got the teacher, position of trust, and those are

1  facts that do not exist in some of the enticement cases I

2  have where they are strangers -- or in production cases.

3        The closest case I can think of is a case I

4  sentenced in Panama City which was a stepfather who was

5  having sex with his stepdaughter and was videoing it; some

6  aggravators, position of trust, stepfather, like teacher.

7  So to me that's the closest analogue perhaps.

8        MS. DAFFIN:  And, Your Honor, that case, *United*

9  *States versus Stewart* was cited in the government's

10  sentencing memo.  Your Honor had sentenced that individual

11  to 720 months' incarceration.

12        Another case that might be more recent that my

13  office was able to identify that Your Honor had sentenced in

14  Gainesville was *United States versus Joshua Hansen* where

15  Your Honor imposed a 360-month sentence on essentially a

16  production of child pornography case.  But, again, all the

17  facts are all unique.  There isn't -- as Your Honor said,

18  there is no specific set of facts, much like a drug

19  trafficking conspiracy, where we can quantify an issue

20  related to sentencing disparity because the facts are all so

21  unique.

22        For this particular victim, as Your Honor saw, she

23  went through the trauma of explaining her personal

24  experience, something that was so traumatic that she had an

25  emotional breakdown at school which led to the disclosure

1   and the state court charges and the investigation being

2   initiated.

3           Your Honor saw what she went through through the

4   testimony and how difficult that was for her so much so that

5   the victim and her family chose not to participate in

6   sentencing.  She's hoping for closure.  She's hoping to put

7   this matter behind her.

8           I certainly don't control, obviously, what the

9   state court prosecutor chooses to do, but my assumption,

10  based on my conversations with them and the victim's family,

11  that it's unlikely that the Wakulla County case will go

12  forward based on the victim's wish to have closure and not

13  go forward in any further proceedings.

14          Thank you, sir.

15          THE COURT:  Mr. Murrell.

16          MR. MURRELL:  I don't know about that *Stewart*

17  case.  I'd have to say a stepfather having a relationship

18  with his stepdaughter, I would suggest, is probably more --

19          THE COURT:  I sentenced --

20          MR. MURRELL:  -- egregious.

21          THE COURT:  The case was different.  There were

22  other aggravators and he earned every day of the sentence I

23  gave him.

24          But go ahead.

25          MR. MURRELL:  I did hear Mr. Hansen.  We

represented Mr. Hansen, and I think it makes for a good

comparison.  Mr. Hansen was exploiting his own daughter

of -- let's see, I think she was five or six and his niece

who was seven or eight.  Before that Mr. Hansen was, sort

of, a target of the FBI.  He was online threatening people.

And Mr. Hansen's lawyer told me that he had been thumbing

his nose at the FBI for years, which led to -- they were

monitoring his Internet activity and eventually they found

that he was taking pictures of his daughter and

stepdaughter.

        I don't know how you quantify these things --

Ms. Daffin is right about that -- but I think that would

strike most people as a whole lot worse than what happened

here.  I think the disparity in the cases says a lot.

        And the Court hit on one thing.  I think one of

the great problems with this guideline is it treats people

like Mr. Hughes as anybody that had -- as someone who had

repeated the offense time and time again.  It treats him

like he was a commercial -- in a commercial business of

exploiting children.  And I would suggest that this is not

that case, it's dramatically different.

        And, again, I think that Mr. Hughes is a person

that means well, what he did here was wrong and foolish and

he caused harm, but he is a person that has a good heart and

who was not out to exploit a child.  He fell into a

1    relationship he should not have.

2            So our hope, again, is that you'll consider a

3    sentence to the mandatory 15 years.

4            THE COURT:  Thank you.

5            Y'all can step back.

6            Ms. Daffin, is there any legal cause why sentence

7    should not now be imposed?

8            MS. DAFFIN:  No, Your Honor.

9            THE COURT:  Mr. Murrell?

10           MR. MURRELL:  No, sir.

11           Did you want us to stand?

12           THE COURT:  He can keep his seat.

13           Give me one moment, please.

14        (Pause in proceedings.)

15           THE COURT:  Mr. Hughes, I'm going to tell you what

16   I'm going to do and why I'm going to do it.

17           I want to note a couple of things, and I'm not in

18   any way disparaging the defense.  Mr. Murrell is an able

19   lawyer that appears in this court.  But at the outset the

20   notion that something is consensual or that it's based on

21   real affection, I categorically reject that notion.  You

22   cannot have sex with a minor, end of story.

23           Where it comes into play, and I think impacts the

24   sentence in this case, is that there are more egregious acts

25   that would weigh in favor of a longer sentence.  So the age

1   of the victim, which is already taken into account -- you

2   can have higher points the younger the child is, the worst

3   the case is.  If there are multiple kids, the worse the case

4   is.  If it's sold for -- if it's being done for commercial

5   use.  So there's all kinds of aggravators.

6          So I don't -- I want to make sure for any

7   reviewing court that I recognize the difference between

8   saying this case is not as bad as some cases that come

9   before the Court versus somehow the suggestion that this was

10  somehow a benign relationship.  There's nothing benign about

11  the relationship between an adult and a child, and it bears

12  repeating that it is a child.  This was not a woman, it was

13  a child.

14         The visceral reaction to a case such as this is,

15  Mr. Hughes, is to be a cowboy and simply max out the

16  sentence, and there's not a reviewing court that would find

17  it was substantively unreasonable to do that.  I cannot

18  imagine I would get reversed if I did that by the

19  Eleventh Circuit, but I'm avoiding the urge of the negative

20  visceral reaction to what you did, which is abhorrent, in

21  trying to fashion a sentence based on the facts of this case

22  and comparing it to the facts of other cases.

23         And your lawyer properly noted that there are

24  aggravators that exist in the other cases mentioned that do

25  not exist in this case, and so I find that a life sentence,

1   which was the functional equivalent of life is what I gave

2   Mr. Stewart given the aggravators in that case, and I'll

3   repeat what I said earlier, he earned every day of the

4   sentence I gave him, that case was worse.  And I find other

5   aggravators in the *Hansen* case that didn't exist here as

6   well.

7          However, I then have to consider the other

8   production cases and enticement cases I've sentenced that

9   don't have the aggravator here of the relationship of trust,

10  which has been factored in, that would yield a higher

11  guideline range; that it was a student, which is an

12  aggravator that doesn't exist in other cases where I've

13  imposed the mandatory minimum.  So you're not going to get

14  treated like the worst offender that's been in front of me,

15  but I'm also not just going to give you the mandatory

16  minimum, as I've given others, because there are aggravators

17  that exist in this case that do not exist in other cases.

18         Ultimately, I find any sentence less than 20 years

19  would be an insufficient sentence, and I'm going to impose a

20  20-year sentence, which is 240 months.  That's going to be

21  followed by a period of supervision for 20 years as well.

22         I understand I can do up to a lifetime of

23  supervision, but I find that, again, simply maxing it out,

24  which makes it easy, is not necessary.  I find that it's

25  appropriate to have a lengthy term of supervision once you

1    are released, but certainly a 20-year term is sufficient.

2    So I'm going to impose 20 years in the Bureau of Prisons

3    followed by 20 years of supervised release.

4         Let me make plain for those who like to be

5    Monday-morning quarterbacks as it relates to sentences.  By

6    any measure, 20 years' incarceration for somebody who has

7    never been in prison before followed by 20 years of

8    supervision is a significant sentence.  I do not think that

9    anyone, if you went out on the street and said you are going

10   to go to prison for 20 years, would cast that or

11   characterize that as a slap on the wrist.

12        So I want to make plain for any reviewing court,

13   I've tried to fashion a sentence that accomplishes the

14   purposes of sentencing.  It's a severe sentence that

15   recognizes the gravity of what Mr. Hughes has done, while at

16   the same time, again, remembering that ultimately my job as

17   the judge is to impose a sentence that is sufficient but not

18   greater than necessary, and that is, I believe, what I've

19   endeavored to do by fashioning this sentence.

20        Mr. Hughes, I've told you what I'm going to do.

21   I'm now going to formerly announce your sentence.

22        Let me add one other fact.  Even with the

23   aggravators in this case, I would have been imposing the

24   mandatory minimum potentially if this had been one episode

25   of bad judgment; I can't believe I just did this; this is

1  wrong and cut it off.  So in addition to the aggravators

2  already discussed, the duration, how long this lasted, the

3  number of times it happened, while certainly the victim

4  would have been scarred regardless, I cannot overlook, not

5  diminish the significance of the duration of this

6  relationship -- this sexual relationship.  And so I find

7  that's an aggravator as well that calls for a longer

8  sentence.

9        I've determined the presentence report is accurate

10  and I order the findings of the report to be incorporated in

11  the following sentence:

12        Pursuant to the Sentencing Reform Act of 1984 and

13  all amendments, it is the judgment of the Court that the

14  defendant, Mr. Hughes, is hereby adjudicated guilty of

15  Counts One, Two, and Three, and sentenced to 240 months in

16  the Bureau of Prisons to run concurrently with each other as

17  to all counts.  This satisfies the ten-year mandatory

18  minimum as it relates to Count One and the 15-year mandatory

19  minimum as to Count Two.

20        I find this sentence appropriately addresses the

21  seriousness of the offense and the characteristics of this

22  defendant.  I find this sentence is sufficient but not

23  greater than necessary to accomplish the statutorily defined

24  purposes of sentencing.  I've fully considered the factors

25  set out in 18 U.S.C. Section 3553(a) including the

1  applicable guidelines and policy statements issued by the

2  Sentencing Commission.

3          I find the defendant does not have the ability to

4  pay a fine; therefore, no fine is imposed.

5          I do impose a $100 special monetary assessment for

6  a total of $300.

7          Upon release from imprisonment the defendant shall

8  be placed on supervised release for a term of 20 years as to

9  Counts One, Two, and Three.  While on supervised release the

10  defendant shall comply with the Court's standard conditions

11  including DNA collection and the following special

12  conditions:

13          This defendant must submit to testing to determine

14  whether he is using drugs or alcohol as directed by the

15  probation officer.

16          The defendant shall provide the probation officer

17  all requested financial information -- both business and

18  personal.  I do that because the defendant is required to

19  cooperate with the probation department and the appropriate

20  state agency on child support matters and make all required

21  payments.

22          The defendant must submit his -- in light of the

23  actual facts of this case, that it involved the use of the

24  Internet and Smartphones, the defendant must submit his

25  person, property, house, residence, vehicles, and computers

1  or other electronic communications or data storage devices

2  or media to a search conducted by a United States probation

3  officer.  Failure to submit to a search may be grounds for

4  revocation of release.  He must warn any other occupants of

5  the premises that they must be subject to searches pursuant

6  to the condition.

7          An officer may conduct a search pursuant to this

8  condition only when reasonable suspicion exists that the

9  defendant has violated a condition of his supervision and

10  the areas to be searched contain evidence of such a

11  violation.  Any search must be conducted at a reasonable

12  time in a reasonable manner.

13          Again, in light of the underlying facts of this

14  case and the use of a computer, the defendant shall not

15  possess or use a computer without the prior approval of a

16  probation officer.  "Computer" includes any electronic

17  device capable of processing or storing data as defined in

18  18 U.S.C. Section 1030 and all peripheral devices.

19          Again, in light of the use of the technology in

20  this case to commit this offense, as directed by the

21  probation officer, the defendant shall enroll in the

22  probation officer's Computer Internet Monitoring Program and

23  shall abide by the requirements of the program and the

24  acceptable use contract.

25          The defendant shall not access the Internet or any

1  online computer services at any location including

2  employment without the prior approval of the probation

3  officer.  Online services include any Internet service

4  provider or any other public or private computer network.

5  As directed by the probation officer, the defendant shall

6  warn his employer of restrictions for computer use.

7          The defendant shall consent to the probation

8  officer conducting periodic, unannounced examinations of his

9  computer equipment, which may include retrieval and copying

10  of all data from his computer and any peripheral device to

11  ensure compliance with this condition and/or removal of any

12  such equipment for the purpose of conducting a more thorough

13  inspection.

14          The defendant shall also consent to the

15  installation of any hardware or software as directed by the

16  probation officer to monitor the defendant's Internet use.

17          The defendant shall not possess or use any data

18  encryption technique or program.

19          The defendant shall refrain from accessing,

20  viewing, or possessing via the Internet, or any other form

21  of media, any pornography including adult pornography or

22  other materials depicting sexually explicit conduct as

23  defined in 18 U.S.C. Section 2256(2).

24          The defendant shall not frequent or loiter within

25  100 feet of any location where children are likely to gather

1   or have any contact with the child under the age of 18,

2   excluding his own child, unless otherwise approved by the

3   probation officer.

4          The defendant's employment shall be approved by

5   the probation officer and any change in employment must be

6   preapproved by the probation officer.  The defendant shall

7   submit the name and address of the proposed employer to the

8   probation officer at least ten days prior to any scheduled

9   change.

10          Similarly, the defendant shall -- residence shall

11   be approved by the probation officer and any change in

12   address must be preapproved by the probation officer.  The

13   defendant shall submit the address of any proposed residence

14   to the probation officer at least ten days prior to any

15   scheduled change.

16          The defendant shall participate in and

17   successfully complete sex offender specific treatment as

18   directed by the probation officer.

19          The defendant is to pay part or all of the costs

20   of the treatment at an amount not to exceed the cost of

21   treatment as deemed appropriate by the probation officer.

22   The actual copayment schedule should be determined by the

23   probation officer.

24          The probation officer shall release the

25   presentence report and all previous mental health

1   evaluations to the treatment provider.

2              Finally, the defendant shall register with the

3   state sex offender registration agency as required by state

4   law.  The defendant shall provide proof of registration to

5   the probation officer within three days of release from

6   imprisonment, placement on supervision, and any state that

7   has adopted the requirements of the Sex Offender

8   Registration and Notification Act.

9              The defendant shall also comply with all such

10  requirements as directed by the probation officer, the

11  Bureau of Prisons, or any state sex offender registration

12  agency in which he resides, is a student, or is convicted of

13  a qualifying offense.

14             The total sentence is 240 months' imprisonment,

15  20 years on supervised release, a $300 special monetary

16  assessment.

17             Mr. Hughes, do you understand the sentence I've

18  imposed?

19             THE DEFENDANT:  I do, Your Honor.

20             THE COURT:  Mr. Murrell, do you have any

21  objections to this Court's findings of fact or conclusions

22  of law?

23             MR. MURRELL:  Yes, sir.  Our position is the

24  sentence is greater than necessary to fulfill the goals of

25  sentencing.  I would also object to the requirement that he

1    pay for counseling.

2            He will be a registered sex offender.  The

3    employment prospects of registered sex offenders are very

4    low, and I would suggest it would be difficult for him to

5    pay those kind of payments.

6            I did have one other request --

7            THE COURT:  Well, what I will add to that is that

8    it will be based on his ability to pay.  If he has zero

9    ability to pay, then he will not have to pay one dime

10   towards that treatment.

11           MR. MURRELL:  I do have one other request.

12           I would ask the Court to consider recommending to

13   the Bureau of Prisons that he serve a sentence at Coleman.

14           THE COURT:  I'll recommend that he serve his

15   sentence at Coleman.

16           Ms. Daffin, objections to the findings of fact or

17   conclusions of law?

18           MS. DAFFIN:  No, Your Honor.

19           THE COURT:  All right.

20           I will only add to any reviewing court, I've

21   avoided sentencing Mr. Hughes as if I was a state judge

22   sentencing him on the lewd and lascivious.  I will note that

23   in similar cases when I was sentencing defendants for lewd

24   and lascivious, I ran the counts consecutively.  I believe

25   they are the only consecutive counts that I ever imposed as

1  a state court judge because I found that 15 years was an

2  inadequate sentence.

3          But I'm also mindful of what I was sentencing

4  Mr. Hughes here to today, that is, the charges.  I also was

5  mindful of what others have done; that is, had aggravators

6  that did not exist in other sentences I had imposed.  It was

7  on that basis that I arrived at the sentence.

8          But I avoided doing what I think some judges do,

9  which is sentencing Mr. Hughes for the underlying state

10  court charges which is not what I was tasked to do here

11  today.  While it was relevant conduct, it would be

12  inappropriate for me to step in the shoes of the state court

13  and I did not do so.

14          Mr. Hughes, you have the right to appeal this

15  sentence.  If you are unable to afford the cost of an

16  appeal, you may apply for leave to appeal in forma pauperis.

17  You have the right to appeal your judgment and sentence I

18  should have said.  If you are unable to afford the cost of

19  an appeal, you may apply for leave to appeal in forma

20  pauperis.  Any appeal must be filed within 14 days.  Upon

21  request, the clerk will immediately file a notice of appeal

22  on your behalf.

23          Do you understand, Mr. Hughes?

24          THE DEFENDANT:  I do.

25          THE COURT:  Anything further from the government?

1          MS. DAFFIN:  No, Your Honor.

2          THE COURT:  Anything further from the defense?

3          MR. MURRELL:  No, sir.

4          THE COURT:  All right.

5          Good luck to you, Mr. Hughes.

6          Court is in recess.

7      (Proceedings concluded at 11:48 AM on Friday, March 29,

8  2019.)

9                    * * * * * * * *

10         I certify that the foregoing is a correct
   transcript from the record of proceedings in the
11  above-entitled matter.  Any redaction of personal data
   identifiers pursuant to the Judicial Conference Policy on
12  Privacy is noted within the transcript.

13

14  /s/ Megan A. Hague                    5/29/2019

15  Megan A. Hague, RPR, FCRR, CSR        Date
   Official U.S Court Reporter
16

17                   **I N D E X**

18  DEFENDANT'S EXHIBITS              OFFERED   RECEIVED

19  1     Letter from defendant's          6         6
         father

20

21

22

23

24

25